UNIVERSITY DAY CARE CENTER,
INC., et al., Plaintiffs,

v.

TEMPLE UNIVERSITY—OF THE COM-
MONWEALTH SYSTEM OF HIGHER
EDUCATION, Broad and Berks Streets,
Philadelphia, Pennsylvania, et al., De-
fendants.

Civ. A. No. 70-2582.

United States District Court,
E. D. Pennsylvania.

Jan. 21, 1971.

David H. Pittinsky, Louis M. Natali, Jr., Alan Lerner, Philadelphia, Pa., for plaintiffs.

Peter Platten, Tyson W. Coughlin, Philadelphia, Pa., for defendants.

OPINION

JOHN MORGAN DAVIS, District Judge.

The cause before this Court is a class action brought by the individual members of the Temple University Day Care Action Committee and its non-profit corporate entity, University Day Care Center, Inc. Plaintiffs seek (1) the dissolution of an *Ex Parte* Injunction issued by

the Court of Common Pleas, prohibiting their use of the 1st floor quiet lounge in Mitten Hall as a day care center; (2) an injunction preventing defendants, the University, its President and officers, from interfering with their activities; and (3) an order restraining defendants from seeking further *ex parte* injunctions against plaintiffs.

This entire matter is one which should not be in the courts, either federal or state. The entire crisis was, for the most part, due to a lapse in intra University relations.

The issues, and even the jurisdictional questions involved here, cannot be resolved without a somewhat lengthy review of the facts surrounding the present problem.

The court finds the facts to be substantially as follows:

On December 22, 1969 the Student Activities Committee of Temple University ("SAC"), a group consisting of three members of the administration, three of the faculty and nine students, voted unanimously that said committee shall formally assume "final authority in allocating and assigning office space in student activity areas" of Mitten Hall and the student activities center. Neither facility contains any classrooms. Among those voting on the proposal were the Dean of Women and the Director of Student Activities.

On or before February 25, 1970 the Director of Student Activities informed, by letter, ranking administrative officers (including three Vice-Presidents) of the resolution of December 22, 1969. No formal replies were ever received. On March 18, 1970 "SAC" reasserted its position by condemning an allocation of student activity space by the President's Cabinet. Thereafter the Cabinet referred the allocation to SAC for its decision.

From December 22, 1969 until September 1, 1970 SAC made twenty-nine allocations of student activity space, none of which were ever challenged.

On April 6, 1970 the Day Care Action Committee received recognition as a student activity. Sometime later they incorporated, at the request of the University. During the summer of 1970 the Day Care Center, Inc. (DCC) by contract with the University operated a Day Care facility in Peabody Hall, a girls residence dorm. At the termination of the contract the DCC moved to a location in the basement of the Baptist Temple, a building "on" campus but not owned by the University.

A field representative of the State Welfare Department reported that the Baptist Temple facilities were not adequate for extended use.

On September 1, 1970 SAC unanimously allocated to DCC the first floor lounge of Mitten Hall. Again the Dean of Women and the Director of Student Activities voted in favor. Also, prior to the SAC action, the Vice President for Student Affairs, Doctor Elwyn A. Smith, endorsed the use of the above lounge and on September 10, 1970 he so recommended to the President's Cabinet.

On September 10, 1970 DCC moved into the 1st floor quiet lounge, apparently relying on SAC's authority.

On the afternoon of September 15, 1970 Doctor Paul R. Anderson, the President of the University, sent DCC a letter ordering them to vacate said lounge.

Officers of DCC then approached Doctor Smith and requested a one day extension as many of the members had left for the day and it would be difficult to notify them. Doctor Smith then went to Doctor Anderson with the request. Doctor Anderson, at approximately 6:00 P. M. refused to see the students or grant the extension.

The next morning, when the students and their children arrived, there were guards at the door. After an informal meeting the students decided to enter the lounge anyway, apparently because they had nowhere to put the children. The guards made no attempt to stop them.

President Anderson immediately ordered that the University apply for an *ex parte* injunction in the Court of Common Pleas. This injunction was obtained the same day and the students left the lounge.

On September 17, 1970 this present action was filed alleging jurisdiction under 42 U.S.C.A. § 1983 and/or 28 U.S.C.A. § 1343, claiming a violation of the 14th Amendment.

The Court of Common Pleas which convened the hearing on whether the state injunction should be continued, deferred decision pending the outcome of the present action. By stipulation of the parties the original injunction was continued.

The allegation before the Court of Common Pleas was of unauthorized obstruction of University facilities by DCC. The action before this court alleges violations of the Civil Rights Act and the 14th Amendment of the Constitution. Both actions rest on erroneous grounds.

█ The only real issue involved in this matter is the real or apparent authority of the SAC. The University's application in the Court of Common Pleas was at best premature. The University has not put forth any evidence which would justify them bypassing the emergency provisions of Principals 1–7 and Section III of the Temple Plan for University governance, which provisions had previously been adopted by the trustees. Temple University being state supported, 24 P.S. § 2510 et seq., the above emergency provisions should have been compulsorily followed prior to any state court action. The rationale of the administration given at the hearing does not hold water. Vice-President Smith testified (N.T. 308) that President Anderson was not sure that the persons involved in the disagreement were all university students. In light of the fact the DCC was a recognized *student* activity, such assumption, in the absence of any attempt to verify, was unreasonable.

Had reasonable minds prevailed in the situation the emergency panel would have convened to determine whether SAC had entered into a one year contract with DCC (as the University had done the summer before) for the use of Mitten Hall's first floor quiet lounge as a day care center. This procedure still remains as the best course of action for the parties. If the prescribed administrative procedures had been unable to settle the question then the Court of Common Pleas would have been the proper forum.

It is unlikely that any prospect of irreparable harm would have necessitated such a drastic deviation from the above procedure (since DCC had been in the lounge for a week it is questionable whether a stay of a day or two more would have constituted any irreparable harm).

It was necessary for the Court to review what has been done and what should have been done in order to determine the jurisdictional questions. A major jurisdictional contention of plaintiffs is that Doctor Anderson's choice to ignore SAC's authority and to bypass the emergency panel served to deprive plaintiff of their due process and equal protection rights.

█ While one may sympathize with the plaintiffs in their protest over the chain of events, this Court cannot agree that any real constitutional question is presented. The questions to be resolved are ones of agency and contract, and such a dispute does not in this case constitute a violation of either 42 U.S.C.A. § 1983 or 28 U.S.C.A. § 1343. While it is conceivable that these sections could be violated by actions that may follow this point in time, any present claim of jurisdiction by this court would be premature. Likewise, in the absence of a substantial constitutional question, defendant's motion for a three judge court is denied. Swift & Co. v. Wickham, 382 U.S. 111, 115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

**382**

Plaintiffs at this point have available full and adequate redress in the Courts of Pennsylvania.

And therefore, to wit, this 21st day of January 1971, it is ordered, adjudged, and decreed that the above captioned case be and hereby is dismissed.